## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| | : Case No.: 23-10253 (KBO) |
| AKORN HOLDING COMPANY LLC, *et al.*,[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, et al., | : |
| | : |
| | : |
| | : |
| Plaintiff, | : Adv. Proc. No. 25-50160 (KBO) |
| | : |
| v. | : |
| | : |
| LEADIANT BIOSCIENCES, INC., | : |
| | : |
| Defendant. | : |

## DEFENDANT LEADIANT BIOSCIENCES INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS AND TO DISALLOW CLAIMS

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of their federal tax identification numbers and cases numbers, are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO) ("**Akorn Holding**"); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO) ("**Akorn Intermediate**"); and Akorn Operating Company LLC (6184), Case No. 23- 10255 ("**Akorn**" and collectively, "**Debtors**"). Debtors' headquarters is at 5605 CenterPoint Court, Gurnee, IL 60031.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................

PRELIMINARY STATEMENT ................................................................................................ 4

STATEMENT OF THE STAGE OF THE PROCEEDING......................................................... 7

STATEMENT OF FACTS ......................................................................................................... 7

    A.    Leadiant's Proof of Claim and Administrative Priority Claim. ............................. 8

    B.    The Trustee's Adversary Proceeding against Leadiant. .......................................... 9

LEGAL STANDARD................................................................................................................ 10

ARGUMENT ........................................................................................................................... 12

I.    COUNT I OF THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM FOR THE AVOIDANCE OF A PREFERENTIAL TRANSFER UNDER SECTION 547 OF THE BANKRUPTCY CODE............................................................................... 12

    A.    The Complaint Does Not Adequately Plead an Antecedent Debt......................... 12

    B.    The Trustee Fails to Adequately Plead "Reasonable Diligence" and Ignores Known Affirmative Defenses under Section 547(c) of the Bankruptcy Code. ....................................................................................................... 15

II.    COUNT II OF THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR THE AVOIDANCE OF A CONSTRUCTIVE FRAUDULENT TRANSFER UNDER SECTION 548(A)(1)(B) OF THE BANKRUPTCY CODE ............................ 19

    A.    The Trustee Failed to Adequately Plead that Akorn Operating Received Less than Reasonably Equivalent Value in Exchangefor the Transfers. ........................ 20

III.    COUNTS III AND IV FAIL TO STATE CLAIMS UNDER SECTIONS 502(D) AND 550 OF THE BANKRUPTCY CODE. .................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

### <u>*Cases*</u>

*Anderson News, L.L.C. v. News Grp., Inc.* (*In re Anderson News, L.L.C.*),
2012 WL 3638785 (Bankr. D. Del. Aug. 22, 2012) ..................................................... 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 11

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ........................................................................................ 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007*)*..................................................................................................... 11

*Bernardez v. Pawlowski (In re Pawlowski)*,
428 B.R. 545 (E.D.N.Y. 2010) .................................................................................... 14

*In re BMT-NW Acquisition L.L.C.*,
582 B.R. 846 (Bankr. D. Del. 2018) ............................................................................ 23

*Burtch v. Huston (In re USDigital, Inc.)*,
443 B.R. 22 (Bankr. D. Del. 2011) ........................................................................ 14, 22

*Charys Liquidating Trust v. Growth Management, LLC (In re Charys Holding Co.)*,
2010 WL 2774852 (Bankr. D. Del. 2010) ................................................................... 23

*DHP Holdings II Corp. v. Home Depot, Inc.*(*In re DHP Holdings II Corp.)*,
435 B.R. 264 (Bankr. D. Del. 2010) ............................................................................ 23

*Friedman's Liquidating Trust. v. Roth Staffing Cos. LP* (*In re Friedman's Inc.),*
738 F.3d 547 (3d Cir. 2013) ..................................................................................... 5, 16

*Gellert v. Lenick Co*. (In re Crucible Materials Corp*.),*
2011 WL 2669113 (Bankr. D. Del. July 6, 2011) ....................................................... 13

*Giuliano v. Liquid Holdings Group, Inc. (In re Liquid Holdings Group, Inc.),*
2018 WL 6841351 (Bankr. D. Del. 2018) ................................................................... 13

*Giuliano v. Mitsubishi Digit. Elecs. Am., Inc.* (*In re Ultimate Acq. Partners, LP)*,
2012 WL 1556098 (Bankr. D. Del. May 1, 2012) ....................................................... 23

*Global Link Telecom Corp. v. Avantel, S.A.* (*In re Glob. Link Telecom Corp.*),
327 B.R. 711 (Bankr. D. Del. 2005) ............................................................................ 19

*In re Discovery Zone Inc.*,
2004 WL 2346002 (D. Del. Oct. 5, 2004) ............................................................ 6, 17

*In re KB Toys Inc.*,
736 F.3d 247 (3d Cir. 2013) .................................................................................. 23

*Pillowtex Corp. v. Classic Packaging Co. (In re Pillowtex Corp.)*,
427 B.R. 301 (Bankr. D. Del. 2010) ...................................................................... 19

*Tweeter Opco v. Mitsubishi Digit. Elecs. Am. Inc. (In re Tweeter Opco)*, 452 B.R. 150 (Bankr. D. Del. 2011) ........................................................................................................ 13

*James Cable, L.L.C. v. Millenium Digit. Media Sys., L.L.C. (In re Broadstripe, L.L.C.)*,
435 B.R. 245 (Bankr. D. Del. 2010) ...................................................................... 10

*JLL Consultants, Inc. v. Gothner In re AgFeed USA, L.L.C.)*,
558 B.R. 116 (Bankr. D. Del. 2016) 20

*Cred Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*,
650 B.R. 803 (D. Del. 2023) .................................................................................. 10

*MCG Ltd. Partners v. Haskett (In re MCG Limited Partnership)*,
545 B.R. 74 (Bankr. D. Del. 2016) 20, 21

*Miller v. Easy Star Records (In re D.A. Liquidating Corp.)*,
622 B.R. 172 (Bankr. D. Del. 2020) ...................................................................... 13

*Miller v. Welke (In re United Tax Grp., LLC)*,
2016 WL 7235622 (Bankr. D. Del. 2016) .............................................................. 20

*Official Committee. of Unsecured Creditors v. Credit Suisse (In re Champion Enters., Inc.)*,
2010 WL 3522132 (Bankr. D. Del. 2010) .............................................................. 10

*Official Committee of Unsecured Creditors v. Corcoran (In re Washington Mutual Inc.)*,
2013 WL 3757330 (Bankr. D. Del. July 16, 2013) ................................................ 14

*Parkell v. Lyons*,
2019 WL 1435885 (D. Del. Mar. 31, 2019) ........................................................... 11

*In re PennySaver USA Publishing L.L.C.*,
587 B.R. 445 (Bankr. D. Del. 2018) ...................................................................... 23

*Pinktoe Liquidation Tarantula v. Dellal (In re Pinktoe Tarantula Ltd.)*,
2023 WL 2960894 (Bankr. D. Del. Apr. 14, 2023) ............................................... 15

iv

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distributors),*
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ............................................................. 20

*Sunset Aviation, Inc. v. Shorenstein Co., (In re Sunset Aviation, Inc.),*
468 B.R. 641 (Bankr. D. Del. 2011) ........................................................... 19

*Talley v. Christiana Care Health System,*
2018 WL 4938566 (D. Del. Oct. 11, 2018) ................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ................................................................................... 10

*THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.),*
2016 WL 1599798 (Bankr. D. Del. 2016) .................................................. 14

## **Statutes**

11 U.S.C. § 502 ........................................................................................... 4

11 U.S.C. § 502(d) ............................................................................... *passim*

11 U.S.C. § 503(b)(9) ................................................................................... 8

11 U.S.C. § 544 .......................................................................................... 22

11 U.S.C. § 547 ........................................................................................... 4

11 U.S.C. § 547(b) ............................................................................... *passim*

11 U.S.C. § 547(c)(4) ................................................................................. 17

11 U.S.C. § 548 ........................................................................................... 4

11 U.S.C. § 548(a)(1)(B) ............................................................................. 9

11 U.S.C. § 550 ........................................................................................... 4

11 U.S.C. § 550(a) ..................................................................................... 22

## **Rules**

Fed. R. Bankr. P. 7012 ................................................................................ 4

Fed. R. Civ. P. 8(a) .................................................................................... 11

Fed. R. Civ. P. 9(b) .................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 4, 10

Del. Bankr. L.R. 7012-1 ................................................................................................................. 7

Defendant, Leadiant Biosciences, Inc., f/k/a Sigma-Tau Pharmaceuticals, Inc. ("**Leadiant**"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (collectively, the "**Rules**"), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and sections 502, 547, 548, and 550 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), hereby submits its opening brief (the "**Opening Brief**") in support of its *Motion to Dismiss* (the "**Motion to Dismiss**") the *Complaint for Avoidance and Recovery of Transfers Under 11 U.S.C. §§ 547, 548 & 550 and to Disallow Claims Under 11 U.S.C. § 502* [Adv. D.I. 1] (the "**Complaint**"), filed by George L. Miller, in his capacity as the Chapter 7 Trustee (the "**Trustee**").

## PRELIMINARY STATEMENT

The Trustee's Complaint seeks to avoid two pre-petition payments (totaling $953,406.50) (the "**Transfers**") made by Akorn to Leadiant as preferential and/or fraudulent transfers, and to recover those payments under section 550, with a further demand to disallow Leadiant's claims under section 502(d). The Complaint, however, is fundamentally deficient under established pleading standards. Instead of alleging facts to substantiate each element of his avoidance claims, the Trustee merely reiterates the statutory language of sections 547 and 548 of the Bankruptcy Code and presents conclusory assertions that Leadiant is liable without any factual detail beyond the mere existence of the referenced payments.

There is no discussion relating to the nature of the business relationship between the parties; no discussion of what the applicable payments related to; no discussion of when the payments were due, the course of dealing among the parties, or the terms of the parties' agreements; and no discussion whatsoever to reflect that the Trustee engaged in *any diligence*, much less the "*reasonable due diligence*" required under section 547(b), to determine whether Leadiant had any "known or reasonably knowable" affirmative defenses that would negate

liability. Indeed, the term "Leadiant" could be replaced with the name of any of the other avoidance defendant sued in the Trustee's multiple adversary proceedings and the Complaint would not need to be modified other than to change the exhibit of listed transfers.

As a result of the Trustee's assembly-line pleading, the Trustee does not plausibly allege facts to support his claims or establish that he undertook the "reasonable due diligence" that is required under section 547(b) prior to filing this Complaint. For example, the Complaint fails to address whether the Trustee considered the undisputed fact that Leadiant was granted an administrative expense claim in the amount of $217,828.94 (by stipulation) on account of its delivery of goods to Akorn in the 20 days prior to the Petition Date, *see* D.I. 599, or explain why the Complaint failed to account for such new value, which was provided *after* the Transfers, despite binding Third Circuit precedent. *See Friedman's Liquidating Tr. v. Roth Staffing Cos. LP (In re Friedman's Inc.) (In re Friedman's Inc.)*, 738 F.3d 547, 556–57 (3d Cir. 2013) (holding that payment of an administrative expense post-petition does not eliminate the new value defense relating to amount paid).

The Complaint similarly fails to account for or discuss other defenses that are clearly discernable from a review of Leadiant's filed proof of claim in the Akorn Operating bankruptcy proceeding, which, among other things, lists new value (i) in *delivered goods* totaling no less than **$432,210.80** after Leadiant received the last payment from Akorn on December 30, 2022—*i.e.*, (i) invoice 206273 for $214,381.86 (goods delivered on Jan. 30 2023) and (ii) invoice 206274 for $217,828.94 (goods delivered on February 6, 2023, for which Leadiant was granted an administrative claim under 503(b)(9))—and (ii) substantial additional amounts owed by Akorn for its continued use of Leadiant's intellectual property prior to the Petition Date, for which Akorn continues to owe unpaid royalties under the parties' License Agreement (including heretofore

unreported royalties), including **$185,493.33** with respect to the Leadiant's royalty rights for the sale of Generic Oral Solution, **$159,969.00** in royalties owed for the sale of property subject to Leadiant's intellectual property rights in December of 2022 (*i.e.*, after the first payment referenced in the Complaint), and additional amounts owed under the License Agreement for sales subject to Leadiant's royalty rights made in January and February of 2023, which have not been reported. *See*, *In re Discovery Zone Inc.*, No. Civ. A. 03-1034-KAJ, 2004 WL 2346002 (D. Del. Oct. 5, 2004) (holding that debtor's use of intellectual property without payment of required royalties for such use constituted new value); *see also*, Claim 350-1 in Case 23-10255-KBO (the "**Proof of Claim**"), a true and correct copy of which is attached as **Exhibit "A"** hereto (addressing unpaid royalty obligations under License Agreement).

None of this—all of which is of record in this case—appears to have been assessed or considered. Although the Trustee generally claims to have sent Leadiant a pre-action demand letter requesting its input on defenses to the Trustee's anticipated avoidance claims, *see* Compl. at ¶¶ 17-18, a copy of that letter, which was shared with Leadiant's counsel after the commencement of this proceeding makes plain that it was sent to a P.O. Box, and not to the address designated by Leadiant for all notices in its filed Proof of Claim. *See* Ex. A. To the extent that this was the extent of the Trustee's diligence efforts, the Complaint should, at minimum, be amended to better explain the facts reflecting the Trustee's diligence efforts, and/or refiled once the diligence requirement is satisfied.

The law is clear—a party cannot state a claim for relief merely by reciting the elements of a cause of action. Litigants must allege *factual matter* that, if true, would support liability. As more specifically set forth below, the Trustee has failed to do so. The Complaint—which is comprised

entirely of boilerplate allegations and contains no specific facts beyond an appended payment schedule—does not state plausible claims and should be dismissed in its entirety.

## STATEMENT OF THE STAGE OF THE PROCEEDING[2]

On February 23, 2023 (the "**Petition Date**"), the Debtors commenced these jointly administered cases by filing voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee for the estates of the Debtors.

On February 11, 2025, the Trustee commenced this adversary proceeding by filing the Complaint against Leadiant [Adv. D.I. 1 at 1]. The Trustee's Complaint asserts causes of action to avoid and recover two pre-petition transfers to Leadiant, totaling $953,406.50, as preferential under section 547 of the Bankruptcy Code and constructively fraudulent under section (a)(1)(B) of the Bankruptcy Code. [Adv. D.I. 1 ¶¶ 1, 21–35].

Leadiant now files its Motion to Dismiss in lieu of an answer to the Complaint. No other pleadings or motions have been filed, and the Motion to Dismiss is now pending before the Court. Under Local Rule 7012-1, Leadiant does not consent to the entry of final orders or judgments by the Court.

---

[2] A court can consider pleadings and filings under judicial notice on a motion to dismiss without converting it to a summary judgment motion. *L.T. Assocs., L.L.C. v. Sussex Cnty. Council*, No. 11-774-MPT, 2013 WL 3998462, at *3 (D. Del. Aug. 5, 2013). In resolving a motion to dismiss, "a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021) (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). In addition to taking judicial notice of pleadings filed on their own docket, courts may take judicial notice of records of other courts. *Galope v. New Century Mortg. Corp.* (*In re New Century TRS Holdings, Inc.*), No. 07-10416 (KJC), 2013 WL 5755058, at *1 (Bankr. D. Del. Oct. 16, 2013) ("Much of this background cites to pleadings, rulings and other events that have taken place during the Debtors' chapter 11 bankruptcy case, as referenced by the docket numbers to pleadings in the main bankruptcy case.").

## STATEMENT OF FACTS

Leadiant is a pharmaceutical company focusing on the research, development, and commercialization of patient therapies for rare diseases. Prior to the Petition Date, Leadiant and Akorn, Inc. entered into a long-term supply and license arrangement, including a *License Agreement* dated April 1, 2016 (together with a related API Supply Agreement, the "**Agreements**").

### A.      **Leadiant's Proof of Claim and Administrative Priority Claim.**

On June 22, 2023, Leadiant filed its Proof of Claim against Akorn Operating, as assignee of Akorn Holding Topco LLC, successor-in-interest to Akorn, Inc., for an unsecured claim in a total amount no less than $2,270,584.19. *See* Ex. A., Claim No. 350 at pg. 4.

On June 23, 2023, Leadiant filed the *Motion of Leadiant Biosciences, Inc. for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9)* [D.I. 478] (the "**Admin Motion**") seeking the allowance of an administrative expense claim in the amount of $217,828.94 (the "**Administrative Claim**") under section 503(b)(9) of the Bankruptcy Code for goods delivered and accepted by Akorn during the 20-day period preceding the Petition Date, as identified in its Proof of Claim.

On September 5, 2023, counsel to the Trustee and Leadiant filed a *Stipulation* [D.I. 599-1] (the "**Stipulation**") resolving Leadiant's Admin Motion and providing for the payment of the Administrative Claim. Under the Stipulation, the Trustee agreed and acknowledged that the Debtors had received, retained, and benefited from Leadiant's shipment delivered on February 7, 2023, and stipulated that Leadiant's administrative expense claim under section 503(b)(9) was fully allowed in the asserted amount of $217,828.94. [D.I. 599-1, at ¶1]. The Stipulation further provided that this administrative claim would be paid on a pro-rata basis alongside other allowed administrative claims arising under section 503(b)(1), subject to the availability of estate funds

and under further orders of this Court. *Id*. On the same day, the Bankruptcy Court entered its *Order Approving Stipulation Resolving Motion of Leadiant Biosciences, Inc. for Allowance and Payment of Administrative Expense Claim* [D.I. 599] (the "**Administrative Expense Order**").

Leadiant's Administrative Claim has since been paid in full.

### B.   The Trustee's Adversary Proceeding against Leadiant.

On March 6, 2025, the Trustee initiated the above-captioned adversary proceeding by filing its Complaint, which seeks avoidance of two pre-petition transfers to Leadiant totaling $953,406.50 as preferential transfers under section 547(b) and, alternatively, as constructively fraudulent transfers under section 548(a)(1)(B). The Complaint also seeks recovery of the foregoing transfers pursuant to section 550(a), and disallowance of Leadiant's remaining claims under section 502(d) until such transfers are repaid [Adv. D.I. 1 ¶¶ 21–35].

In paragraph 19 of the Complaint, the Trustee summarily alleges that he "conducted a review of the Debtors' books and records" and purportedly "took into account known or reasonably knowable affirmative defenses" before filing the Complaint [Adv. D.I. 1 at ¶ 19]. Notably, however, the Complaint neglects to provide any facts explaining the Trustee's diligence efforts, including whether he considered the Stipulation, the Administrative Expense Order, or the significant post-transfer new value identified in Leadiant's Proof of Claim, including (i) invoice 206273 for $214,381.86 (for goods delivered on Jan. 30 2023), (ii) invoice 206274 for $217,828.94 (for goods delivered on February 6, 2023), and (iii) amounts owed on account of Akorn's use of Leadiant's intellectual property prior to the Petition Date, for which Akorn continues to owe unpaid royalties, including **$185,493.33** with respect to the Leadiant's royalty rights for the sale of Generic Oral Solution, $159,969.00 in royalties owed for the sale of property subject to Leadiant's intellectual property rights in December of 2022, and additional amounts owed under

the License Agreement for unreported sales subject to Leadiant's royalty rights made in January and February of 2023. These omissions are significant.

The Trustee's failure to address any of these facts, including those that can be easily confirmed on the Court's docket, undermines the plausibility and legal sufficiency of his Complaint. It reveals a fundamental failure by the Trustee to meet his statutory obligation to account for reasonably knowable affirmative defenses prior to initiating preference litigation. *See* 11 U.S.C. § 547(b).

Additionally, although the Trustee has alleged that he sent a pre-suit demand letter (the "**Demand Letter**") to Leadiant in December 2024—well after Leadiant's Proof of Claim had been filed and partially allowed by stipulation and court order [Adv. D.I. 1 ¶ 17], the Trustee's Demand Letter was sent to a generic P.O. box address for Leadiant, even though Leadiant had appeared through counsel, and its filed Proof of Claim listed Leadiant's counsel as the appropriate party to receive notice. *See* Ex. A.

Considered in light of the record that is publicly available, including this Court's prior Administrative Expense Order, the conclusory statements contained in the Complaint cannot plausibly support the conclusion that the Trustee undertook the "reasonable due diligence" required under section 547(b) prior to filing this case.

## **LEGAL STANDARD**

When presented with a Rule 12(b)(6) motion to dismiss, a court is guided by two "working principles" in evaluating the sufficiency of the factual allegations in a complaint. *Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 812-13 (D. Del. 2023) (citations omitted).

"First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 813 (citations omitted). Although well-pleaded facts should be accepted as true, a court need not accept "'unsupported conclusions and unwarranted inferences,' or 'a legal conclusion couched as a factual allegation,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted), or "allegations that are contradicted by other allegations in the [complaint]." *Talley v. Christiana Care Health Sys*., 2018 WL 4938566, at *5 n.4 (D. Del. Oct. 11, 2018). Moreover, the court may consider "'documents incorporated into the complaint by reference and matters of which a court may take judicial notice[,]'" *Off. Comm. of Unsecured Creditors of Champion Enters. Inc. v. Credit Suisse, (In re Champion Enters., Inc.)*, 2010 WL 3522132, at *4 n.7 (Bankr. D. Del. Sept. 1, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Lt*d., 551 U.S. 308, 322 (2007)), and need not accept as true allegations in the complaint contradicted by such documents. *See James Cable, LLC v. Millennium Digital Media Sys., LLC (In re Broadstripe, LLC)*, 435 B.R. 245, 254 n.31 (Bankr. D. Del. 2010).

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss…. [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Cred Inc*., 650 B.R. at 813 (citations omitted). For claims that are not based on alleged fraud, the court must consider whether the complaint satisfies the pleading requirements of Fed. R. Civ. P. 8(a)—i.e., whether the facts alleged in a

complaint are sufficient to show that a plaintiff has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that 'entitlement with its facts.'" *Parkell v. Lyons*, 2019 WL 1435885, at *1 (D. Del. Mar. 31, 2019). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Rather, a plaintiff bears the burden of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## **ARGUMENT**

### I.     **COUNT I OF THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM FOR THE AVOIDANCE OF A PREFERENTIAL TRANSFER UNDER SECTION 547 OF THE BANKRUPTCY CODE.**

Count I of the Trustee's Complaint fails to state a claim for the avoidance of the Transfers as preferences. Section 547(b) of the Bankruptcy Code states that "the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably known affirmative defenses … avoid any transfer of an interest of the debtor in property— (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent … (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider …. " 11 U.S.C. § 547(b).

The Trustee has failed to plead a valid preference claim.

A. **The Complaint Does Not Adequately Plead an Antecedent Debt.**

*First*, the Trustee's Complaint does not sufficiently articulate the antecedent debt owed to Leadiant by Akorn Operating. Count I identifies the dollar value and dates for the Transfers, and it asserts that these payments were made "for or on account of an antecedent debt" owed by the Debtors—Compl. at ¶ 30. However, the Trustee does not specify what antecedent debt is at issue or provide any facts about the transactions underlying each Transfer. The Complaint references unspecified "Agreements" between the Debtors and Leadiant, Compl. at ¶ 16, and states that invoices were issued for goods or services. *Id*. at ¶ 16. But it does not tie any Transfer to a particular invoice, shipment, or debt. It, therefore, remains unclear from the Complaint why the Trustee claims the Debtors made each alleged payment to Leadiant, and or how the Trustee's allegations in this regard can be plausibly reconciled with the claim (in Count II) that the Transfers were "*not made* on account of an antecedent debt or [were] prepayment[s] for goods and/or services subsequently received…." *See* Compl. at ¶ 37.

Bankruptcy courts consistently dismiss preference claims for failure to state a claim where, as here, the pleading does not adequately plead an antecedent debt. *See, e.g., In re Tweeter Opco*, 452 B.R. 150, 155 (Bankr. D. Del. 2011) (dismissing preference claim where trustee failed to provide sufficient detail regarding the nature of the antecedent debt each transfer was paying); *Gellert v. Lenick Co. (In re Crucible Materials Corp.)*, 09-11582 (MFW), Jointly Administered, Adv. No. 10-55178 (MFW), 2011 WL 2669113, at *3 (Bankr. D. Del. July 6, 2011) (preference complaint must, at minimum, identify each transfer by date, amount, and nature of the obligation it satisfied to meet particularity requirements); *Id.* (complaint must "include information detailing the nature of the antecedent debt" and, without facts showing a debtor-creditor relationship and an antecedent debt, the preference claim fails); *Miller v. Easy Star Records* (*In re D.A. Liquidating Corp.*), 622 B.R. 172, 177 (Bankr. D. Del. 2020) (dismissing preference claim where "the Trustee's

preference actions fail to adequately plead antecedent debt" and only offered a conclusory allegation that transfers were for goods or services); *Giuliano v. Liquid Holdings Group, Inc. (In re Liquid Holdings Group, Inc.)*, 2018 WL 6841351, at \*3 (Bankr. D. Del. Nov. 14, 2018) (complaint must do more than allege defendant was a supplier – it must tie each transfer to an antecedent obligation).

The mere fact that a payment was allegedly made under a contract does not suffice to establish that the payment was made on account of an antecedent debt. *See Burtch v. Huston* (*In re USDigital, Inc.*), 443 B.R. 22, 37-38 (Bankr. D. Del. 2011) (dismissing section 547(b) claims for failure to adequately plead the existence of antecedent debt where terms of contracts indicated that payment obligations arose simultaneously with or after challenged transfers); *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, 2016 WL 1599798, at \*3 (Bankr. D. Del. Apr. 18, 2016) (dismissing preference claims where the complaint "merely" alleged that defendants "may have entered into one or more agreements" for services with "one or more of the Debtors"); *Official Comm. of Unsecured Creditors of Washington Mut., Inc. v. Corcoran (In re Washington Mut., Inc.)*, 2013 WL 3757330, at \*4 (Bankr. D. Del. Jul. 16, 2013) (explaining, in dismissing section 547(b) claim, "[b]ecause the severance was paid on the same date that [the debtor's] obligation arose, the Court finds that the severance payment was not made on account of an antecedent debt"); *see also Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC)*, 2012 WL 3638785, at \*2 (Bankr. D. Del. Aug. 22, 2012) ("Payment of a debt on the date it was incurred is generally not for or on account of an antecedent debt.").

As noted, the Trustee's pleading strategy underscores the lack of clarity. The Complaint equivocates by pleading in the alternative that some or all of the Transfers might not have been on account of antecedent debt. Compl. at ¶ 37 (incorporating preference allegations into the fraudulent

transfer count). In other words, the Trustee is hedging—alleging that the Transfers could have been ordinary invoice payments (which would involve antecedent debt) or could have been prepayments (which, by definition, are not for antecedent debt). However, the Trustee cannot have it both ways. Either the Debtors owed a debt to Leadiant for the goods delivered at the time of each Transfer, which would constitute payment on account of an antecedent debt and negate any claim that the Debtors did not receive value, or the Debtors did not yet owe a debt, making the payment a prepayment that could be examined under a different theory; however, in that case, it would not qualify as a preference. At minimum, the Complaint's internal inconsistency fails to give Leadiant fair notice of the Trustee's theory. *See Bernardez v. Pawlowski (In re Pawlowski)* (*In re Pawlowski*), 428 B.R. 545, 560–61 (E.D.N.Y. 2010) (dismissing avoidance claims where the complaint inconsistently suggested transfers could be either in satisfaction of a debt or not, noting the need for the trustee to plead a consistent factual basis for each transfer).

Accordingly, Count I should be dismissed.

**B.    The Trustee Fails to Adequately Plead "Reasonable Diligence" and Ignores Known Affirmative Defenses under Section 547(c) of the Bankruptcy Code.**

As discussed, Count I lacks adequate support to plausibly support the conclusion that the Trustee engaged in reasonable (if any) due diligence prior to filing this preference action. Section 547(b) of the Bankruptcy Code requires that prior to suit, a trustee conduct "reasonable due diligence in the circumstances of the case and take into account a party's known or reasonably knowable affirmative defenses." 11. U.S.C. 547(b). Congress added this requirement to discourage trustees from pursuing meritless preference actions without evaluating whether defenses like new value or ordinary course of business would preclude recovery. See H.R. Rep. No. 116-171, at 4 (2019) (explaining that the amendment is designed to "discourage the filing of speculative lawsuits" in preference actions). As one court put it, "the due-diligence requirement is an element

of a preference claim, not merely an invitation for defendants to assert affirmative defenses later." *Pinktoe Liquidation Tr. v. Dellal (In re Pinktoe Tarantula Ltd.)*, 18-10344 (LSS), 2023 WL 2960894, at *3 (Bankr. D. Del. Apr. 14, 2023).

Notably, the section 547(b) due diligence requirement is a "condition precedent" to recovery—effectively, a part of the trustee's *prima facie* case that must be alleged and proved. *See Id.* (holding that section 547(b)'s due diligence requirement is an element of the claim and dismissing preference complaint that lacked allegations relating to the specific diligence undertaken). While a trustee need not negate affirmative defenses in the complaint, the trustee must demonstrate that it considered such defenses and has a plausible basis to conclude they do not prevent recovery. A complaint that ignores obvious affirmative defenses or offers only a perfunctory recitation of diligence fails to meet the plausibility standard. *Id.*

Here, the Trustee's attempt to satisfy this element is purely formulaic. The Complaint baldly asserts that the Trustee "performed his due diligence evaluation of the reasonably knowable affirmative defenses," and that he or his professionals "reviewed the Debtors' books and records in his possession applicable to the Defendant," Compl. at ¶ 19, and that he made a pre-suit demand on Leadiant. Compl. at ¶ 17. However, these assertions are not supported by any facts.

The Complaint does not describe what the Trustee's purported "due diligence" entailed, what information was reviewed, which potential defenses were considered, or why the Trustee concluded they lacked merit, particularly in light of this Court's Order granting the Stipulation acknowledging that Leadiant had delivered $217,828.94 worth of goods to Akorn within the 20 days prior to the Petition Date (*i.e.*, after all of the alleged Transfers), for which it had not been paid. *See* D.I. 599 (Administrative Expense Order); *see also Friedman's Liquidating Tr.*, 738 F.3d at 556–57 (post-petition payment of administrative expense does not negate new value defense).

Nor does the Complaint provide any facts relating to the content of the Demand Letter beyond saying one was sent.

These allegations—which are wholly devoid of any *facts* concerning what the Trustee actually did to satisfy his due diligence obligation (and which appear to be contradicted at minimum to the full extent of Leadiant's $217,828.94 administrative expense claim)—are exactly the sort of conclusory and formulaic allegations that *Twombly* and *Iqbal* forbid.

Critically, in addition to having stipulated to Leadiant's administrative expense claim (which would, at minimum, reduce any preference claim by the $217,828.94 in new value provided), the Trustee was or should have been aware of specific facts pointing to affirmative defenses under section 547(c) that would limit or bar any recovery from Leadiant, including the following:

**Subsequent New Value (**§ 547(c)(4)**).** As noted, Leadiant's Proof of Claim identifies (i) invoice 206273 for $214,381.86, which relates to goods delivered to Akorn on January, 30 2023; (ii) invoice 206274 for $217,828.94, which relates to goods delivered to Akorn on February 6, 2023 (and resulted in Leadiant's administrative claim).[3] and, further, (iii) identifies amounts owed on account of Akorn's use of Leadiant's intellectual property prior to the Petition Date, for which Akorn continues to owe unpaid royalties, including **$185,493.33** with respect to the Leadiant's royalty rights for the sale of Generic Oral Solution, $159,969.00 in royalties owed for the sale of property subject to Leadiant's intellectual property rights in December of 2022 (which represent a portion of the quarterly fees owed to Leadiant), and additional amounts owed under the License Agreement for unreported sales subject to Leadiant's royalty rights made in January

---

3 *Friedman's*, 738 F.3d at 556–57 (payment of an administrative expense post-petition does not eliminate creditor's ability to assert new value as a defense to a preference claim),

and February of 2023. *See* Ex. A; *see also Discovery Zone*, 2004 WL 2346002 (unpaid use of intellectual property without payment of royalties constitutes new value).

Aside from being a matter of record in this case, this information should be reflected in the Debtors' books and records. The Trustee's silence on these points renders the preference claim implausible.

**Ordinary Course of Business (**§ 547(c)(2)**).** The Trustee's Complaint likewise (in addition to vacillating on whether the Transfers *were* or *were not* on account of an antecedent debt, as discussed above) contains no facts addressing whether the Transfers were made in the ordinary course of business or on ordinary business terms between Akorn and Leadiant. Although the Trustee generically pleads that the Transfers enabled Leadiant to receive more than in a hypothetical liquidation, Compl. at ¶ 33, the Trustee offers no facts concerning the timing of payments, invoice terms, or historical payment practices. If the Debtors paid Leadiant according to ordinary business terms and consistent with past practice, section 547(c)(2) would protect those transfers from avoidance. A trustee should review a debtor's payment history with the creditor and industry norms to assess an ordinary course defense.

Here, the Complaint gives no indication that the Trustee did so.

In light of the above, the Trustee's boilerplate assertion of diligence is not only unsupported—the record contradicts it. The Trustee failed to plead any *facts* relating to the diligence he undertook in investigating Leadiant's available defenses under 547(c), and the facts available strongly indicate that any diligence that may have been undertaken (if any) was woefully inadequate under the circumstances. Courts have rejected preference complaints that check the "due diligence" box without substance. *See Pinktoe*, 2023 WL 2960894, at *4 (dismissing complaint where trustee "merely recited that it considered defenses" but gave no specifics;

requiring the trustee to plead at least a summary of efforts taken to consider known defenses such as reviewing invoices, contacting the creditor, etc.).

At minimum, the Trustee should have acknowledged Leadiant's new value contributions as set forth in the Proof of Claim and acknowledged in the Stipulation and Administrative Expense Order, and explained why, despite them, the Transfers are still avoidable. His failure to do so makes the claim of diligence implausible. The Court is not obligated to accept the Trustee's conclusory statement of compliance with section 547(b)'s proviso when the Complaint's silence on critical defenses speaks volumes.

Because Count I does not plead a viable preference claim under the governing standards, it should be dismissed.

**II.    COUNT II OF THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR THE AVOIDANCE OF A CONSTRUCTIVE FRAUDULENT TRANSFER UNDER SECTION 548(A)(1)(B) OF THE BANKRUPTCY CODE.**

Count II of the Complaint should also be dismissed for failure to adequately allege constructive fraud in connection with the Transfers under section 548(a)(1)(B) of the Bankruptcy Code.

To establish a claim under Section 548(a)(1)(B), a plaintiff must prove that (i) a transfer of an interest of the debtor in property was made, (ii) where the applicable debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation;" and (iii) the applicable debtor:

(I)    was insolvent on the date that such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(II)   was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)  intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

16

(IV) made such transfer to or for the benefit of an insider or incurred such
obligation to or for the benefit of an insider, under an employment contract
and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

While Rule 9(b)'s particularity requirement generally does not apply to constructive fraud (since no fraudulent intent is alleged), Rule 8 still demands enough factual matter to make the claim plausible. Conclusory assertions that track the statute—*e.g.*, the "Debtor didn't receive equivalent value" and the "Debtor was insolvent"—are insufficient without supporting facts. *See In re Pillowtex Corp.*, 427 B.R. 301, 311 (Bankr. D. Del. 2010) (dismissing constructive fraudulent transfer claim for reciting the statute without providing any factual support); *Sunset Aviation, Inc. v. Shorenstein Co.* (*In re Sunset Aviation, Inc.*), 468 B.R. 641, 650 (Bankr. D. Del. 2011) ("a claim for the avoidance of a transfer under § 548 is insufficient when it simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)") (citation omitted); *Glob. Link Telecom Corp. v. Avantel, S.A.* (*In re Glob. Link Telecom Corp*), 327 B.R. 711, 718 (Bankr. D. Del. 2005) (applying a more liberal standard than Rule 9(b) and dismissing constructive fraudulent transfer claim for reciting the statute without "information on the Debtors' financial status or the value of what was received in exchange").

Here, the Trustee breached this cardinal rule of pleading for Count II. Accordingly, Count II should be dismissed.

### A.     The Trustee Failed to Adequately Plead that Akorn Operating Received Less than Reasonably Equivalent Value in Exchange for the Transfers.

*First*, the Trustee fails to plead any facts showing that the Debtor did not receive reasonably equivalent value for the Transfers. In a conclusory manner, the Trustee asserts that the Transfers "did not result in the Debtors receiving equivalent value." Compl. at ¶ 27. The Trustee does not even address the value Leadiant gave in exchange for the Transfers, much less explain why it was

not reasonably equivalent. The Trustee's allegations in Count II can be summarized as follows: the Transfers (i) may not have been for an antecedent debt, (ii) the Debtors did not receive reasonably equivalent value in exchange, and (iii) the Debtors were insolvent or became insolvent as a result of the Transfers. Compl. at ¶¶ 35–38. This is merely a paraphrase of section 548(a)(1)(B).

Bankruptcy Courts uniformly reject these types of pleadings. *See Miller v. Welke (In re United Tax Grp., LLC)*, 2016 WL 7235622, at *3-4 (Bankr. D. Del. Dec. 13, 2016) (dismissing section 548(a)(1)(B) claim where complaint alleged that debtor "received less than a reasonably equivalent value in exchange for the transfers" and "there [we]re no allegations regarding what [d]ebtor received in exchange for the transfers"); *JLL Consultants, Inc. v. Gothner (In re AgFeed USA, L.L.C.) (In re AgFeed USA, L.L.C.*), 558 B.R. 116, 130 (Bankr. D. Del. 2016) (dismissing section 548(a)(1)(B) claim where trustee "d[id] not allege that [former director] received any compensation that he was not owed under [his] Employment Agreement" and "ma[de] no allegations, other than conclusory ones, as to why [payments under that agreement] [we]re in fact, excessive"); *MCG Ltd. Partners v. Haskett (In re MCG Ltd. P'ship*), 545 B.R. 74, 81–82 (Bankr. D. Del. 2016) (dismissing section 548 claims where complaint lacked any factual allegations supporting the assertion of less than equivalent value); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.) (In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (the "mere recitation of the statutory language" is insufficient and plaintiffs must plead facts showing the value of what the debtor gave and what it received).

The Trustee's generalized pleading, which attempts to preserve preference and fraudulent transfer claims, while not explaining the *facts* that he claims support either claim, is improper. As a matter of black-letter law, satisfying a valid antecedent debt constitutes "reasonably equivalent value" to Akorn Operating—the estate is not diminished by the transfer since the debt is discharged

dollar-for-dollar. Here, the Trustee's claim of constructive fraud is both internally inconsistent and implausible. If Akorn Operating paid Leadiant $953,406.50 to satisfy outstanding invoices for antecedent debt, Akorn Operating received $953,406.50 via a dollar-for-dollar reduction in enforceable debt.

The Trustee offers nothing to suggest otherwise. In fact, by alleging these were payments to a creditor on existing obligations (preferences), the Trustee's own theory presupposes that Akorn Operating was paying a debt it owed. There is no allegation of any side agreement, forfeiture, or unbalanced exchange that would make the Debtor's estate poorer as a result of the transfers.

 The Trustee's only basis for contending otherwise is an alternative, speculative allegation that "one or more" of the Transfers *may* have been prepayments for which goods were not delivered or payments that did not ultimately benefit the Debtors. Compl. at ¶ 37. However, the Complaint provides no facts to support this speculation. It does not identify a single transfer that was a prepayment or explain why that transfer lacked consideration. Such threadbare assertions do not meet the pleading standard. *See MCG Ltd. Partners v. Dibrell* (*In re MCG Ltd. P'ship*), 545 B.R. 74, 81–82 (Bankr. D. Del. 2016) (dismissing section 548 claim where complaint lacked any factual allegations supporting the assertion of less than equivalent value)

The Trustee's theory of constructive fraud fundamentally contradicts the preference theory. If the transfers were payments for antecedent debts, the debtors received equivalent value, which would nullify the fraudulent transfer claim. Conversely, if any transfer was a prepayment (arguably not for an antecedent debt), that transfer cannot be avoided as a preference. In this case, the Trustee must demonstrate that the Debtors did not ultimately receive the goods or benefits for which they paid. However, the Complaint fails to specifically allege any instance of this scenario. Courts have

not allowed trustees to assert a speculative fraudulent transfer claim as a fallback to a preference claim without factual differentiation between the transfers.

Accordingly, Count II should be dismissed.

### III.    COUNTS III AND IV FAIL TO STATE CLAIMS UNDER SECTIONS 502(D) AND 550 OF THE BANKRUPTCY CODE.

*Finally*, Counts III and IV cannot survive independently if the underlying avoidance claims are not well-pled. Sections 550 and 502(d) provide follow-on remedies that are entirely derivative of a valid avoidance claim.

Section 550(a) allows the estate to recover property "to the extent that a transfer is avoided under section 544, 547, [or] 548." 11 U.S.C. § 550(a). This provision does not create an independent cause of action. *See Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 40 (Bankr. D. Del. 2011) ("The claims under section 550 … fail because the transfers at issue are unavoidable."). It merely provides the mechanism for a trustee to recover property after successfully avoiding a transfer. Here, the Trustee's claims under section 550 (Count III of the Complaint) are entirely derivative of Counts I and II of the Complaint. Because the Complaint fails to plead an avoidable transfer under either section 547 or section 548, there is nothing for the Trustee to recover under section 550. Courts faced with this scenario routinely dismiss a section 550 claim where the underlying avoidance claim has been dismissed. *See, e.g.*, *Charys Liquidating Trust v. Growth Management, LLC (In re Charys Holding Co.)*, 2010 WL 2774852, at *8 (Bankr. D. Del. July 14, 2010) (dismissing recovery count after finding preference not adequately pleaded).

Count IV must likewise be dismissed. Section 502(d) of the Bankruptcy Code provides for the disallowance of a creditor's claim that has received an avoidable transfer and has not paid the amount or turned over such transfer. *See* 11 U.S.C. § 502(d). Under section 502(d), a bankruptcy claim can be disallowed if a claimant receives property that is avoidable or recoverable by the

bankruptcy estate." *In re KB Toys Inc.*, 736 F.3d 247, 249 (3d Cir. 2013) (citing 11 U.S.C. § 502(d)). By its terms, section 502(d) codifies a remedy to incentivize parties' compliance with turnover of an avoided transfer. It is not a stand-alone cause of action to be brought in an adversary complaint absent a viable avoidance.

Plaintiffs may not bring a claim under Section 502(d) until it has obtained a judicial determination of the alleged transferee's liability. *See, e.g.*, *Giuliano v. Mitsubishi Digit. Elecs. Am., Inc.* (*In re Ultimate Acq. Partners, LP*), 2012 WL 1556098, at *3 (Bankr. D. Del. May 1, 2012) ("The Trustee has not obtained any judicial determination of [the alleged transferee's] liability, and therefore, has no basis for a section 502(d) claim."); *PennySaver USA Publ'g, L.L.C. v. OpenGate Capital Grp.* (*In re Pennysaver USA Publ'g, L.L.C.*), 587 B.R. 445, 468 (Bankr. D. Del. 2018) (dismissing a claim under Section 502(d), as the plaintiff "has failed to obtain a judicial determination on either the preference or the fraudulent transfer claims"); *BMT-NW Acq., L.L.C. v. Brown-Minneapolis Tank ULC, L.L.C.(In re BMT-NW Acq., L.L.C.)*, 582 B.R. 846, 867 (Bankr. D. Del. 2018) ("The Trustee has not obtained a judicial determination on the preference complaint—a prerequisite to a claim under Section 502(d).

Therefore, the Trustee fails to adequately plead a claim under Section 502(d)."); *DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 272–73 (Bankr. D. Del. 2010) ("[S]ection 502(d) is triggered only after a judgment has been entered requiring the turnover of property to the estate. Here, the Debtors have not obtained an order requiring the turnover of the outstanding balance, and therefore section 502(d) is not available.").

## CONCLUSION

**WHEREFORE**, Leadiant respectfully requests entry of an order: (i) granting the Motion;
(ii) dismissing the Trustee's Complaint in its entirety; and (iii) granting Leadiant such other and
further relief as the Court deems proper.

Date: July 17, 2025.                    Respectfully submitted,

                                By:    *Michael Busenkell*
                                       Michael Busenkell, Esq. (DE 3933)
                                       GELLERT SEITZ BUSENKELL &
                                       BROWN, LLC
                                       1201 North Orange Street, Suite 300
                                       Wilmington, DE 19801
                                       Phone: (302) 425-5800
                                       mbusenkell@gsbblaw.com

                                       and

                                By:    *Fernando J. Menedez*
                                       Fernando J. Menendez, Esq.
                                       Florida Bar No.: 18167
                                       SEQUOR LAW
                                       1111 Brickell Avenue, Suite 1250
                                       Miami, FL  33131
                                       Tel: (305) 372-8282
                                       Fax: (305) 372-8202
                                       E-mail: fmenendez@sequorlaw.com

                                       *Counsel for Leadiant Biosciences, Inc.*